ORIGINAL

Approved: _____
          MATTHEW HELLMAN / KARIN PORTLOCK
          Assistant United States Attorneys

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

**18 MAG 3904**

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA        :    **SEALED COMPLAINT**

            - v. -              :    Violations of
                                     18 U.S.C. §§ 1029(a)(2) and
SYED ALI RAZA,                  :    (b)(2), 1028A(a)(1) and (b)
ALI NAQVI, and
MUDASSAR MALIK,                 :
                                     COUNTY OF OFFENSE:
            Defendants.         :    NEW YORK

                                :

- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        MATTHEW SOWA, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

<u>Count One</u>
**(Conspiracy to Commit Access Device Fraud)**

        1.   From at least in or about January 2015 up to and
including the present, in the Southern District of New York and
elsewhere, SYED ALI RAZA, ALI NAQVI, and MUDASSAR MALIK, the
defendants, and others known and unknown, willfully and knowingly
did combine, conspire, confederate, and agree together and with
each other to commit access device fraud, in violation of Title
18, United States Code, Section 1029(a)(2).

        2.   It was a part and an object of the conspiracy that SYED
ALI RAZA, ALI NAQVI, and MUDASSAR MALIK, the defendants, and others
known and unknown, knowingly and with intent to defraud would and
did traffic in and use unauthorized access devices during a one
year period and by such conduct did obtain things of value

aggregating $1,000 and more during that period, in violation of Title 18 United States Code, Section 1029(a)(2).

Overt Act

3.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   On or about February 18, 2015, a credit card obtained by SYED ALI RAZA, ALI NAQVI, and MUDASSAR MALIK, the defendants, using fraudulent means, was charged for $49.43 at a movie theatre in New York, New York.

(Title 18, United States Code, Sections 1029(a)(2) and (b)(2).)

**Count Two**
**(Aggravated Identity Theft)**

4.   From at least in or about January 2015 up to and including the present, in the Southern District of New York and elsewhere, SYED ALI RAZA, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, RAZA possessed and used fraudulently-obtained credit cards issued with the social security numbers of others to unlawfully obtain funds in excess of $1,000, in connection with the offense charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

5.   I am a Special Agent with the FBI and have worked on numerous criminal investigations involving bank fraud, credit card fraud, and identity theft.

6.   I have been involved in the investigation of the offenses charged in this Complaint.   I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and records, and from my conversations with fellow agents and other witnesses.   Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included details

2

of every aspect of the investigation.  Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise noted.

## Overview of the Fraudulent Schemes

7.   I am familiar with, among other financial frauds, fraud schemes wherein the coconspirators appropriate the identities of other individuals (with or without that person's consent or authorization) (the "Straw"), and use the Straws' identities and personal identifying information to incorporate businesses (the "Shell Companies").  Many of the Straw identities belong to foreign nationals who have left the United States and are either (i) paid for their personal identifying information by the coconspirators prior to leaving the country or (ii) unaware that their personal identifying information has been misappropriated for criminal purposes.  The coconspirators, using the Shell Companies, then open bank accounts and obtain business loans and merchant credit card terminals (the "Straw Terminals").  These accounts, lines of credit, and credit card terminals are used by the coconspirators to commit various financial frauds.

8.   For example, once business loans are obtained by the Shell Companies, the monies are fully borrowed from the banks, repayment is never made, and the Straw identities and associated Shell Companies are no longer used (the "Loan Scam").  Furthermore, the coconspirators use the Straw Terminals to manipulate debit card transactions (the "Debit Card Scam").  Specifically, the coconspirators swipe fraudulently obtained debit cards at the Straw Terminals, but no goods or services are exchanged.  The coconspirators operating the Straw Terminals do not immediately claim the funds, which then become available for withdrawal from the cardholder's bank account. Following this waiting period, the cardholder and the coconspirators operating the Straw Terminal simultaneously claim the funds from the fraudulent transaction resulting in duplicative loss to the financial institution.

## The Scheme

9.   From my review of records obtained from Navy Federal Credit Union, BarclayCard, Discover, Webster Bank, the New York State Department of Motor Vehicles, the Rhode Island Department of State, and from my conversations with bank representatives and other law enforcement officers, I have learned the following, among other things:

a.    On or about January 11, 2015, an account was opened at Navy Federal Credit Union (the "NFCU Khan Account") in the name of "Chowhudry Khan" with a particular address in Medford, New York (the "Medford Address") and a phone number ending in 1970 (the "1970 Number") (such identifiers referred to collectively as the "Khan Identity").  The Khan Identity was subsequently used to open credit card accounts with Discover in an application dated February 6, 2015, and with BarclayCard in applications dated September 30, 2015, August 26, 2018, and October 8, 2016.

b.    The Medford Address is listed on the New York State driver's license of SYED ALI RAZA, the defendant.

c.    On November 23, 2015, an entity named "Khan Elegant Arrangements, Inc." was incorporated and registered with the Rhode Island Department of State.   The incorporator was listed as "Chowhudry Khan" with an address of 586 N. Main Street, Woonsocket, Rhode Island 02895 (the "N. Main Address").

d.    On March 22, 2016, an entity named "CK Wholesale Foods, Inc." was incorporated and registered with the Rhode Island Department of State.   The incorporator was listed as "Chowhudry Khan" with an address of 159 Rathbun Street, Woonsocket, Rhode Island 02895 (the "Rathbun Address").

e.    On or about April 5, 2016, an Ontario driver's license in the name of "Chowhudry Khan" (the "Ontario License") was used at Webster Bank in Pawtucket, Rhode Island, to open six accounts--two belonging to "Khan Elegant Arrangements, Inc." (the "Khan Elegant Webster Account") and "CK Wholesale Foods, Inc." (the "CK Webster Account"). Specifically, the Khan Elegant Webster Account was opened with the Ontario License and the N. Main Address, and the CK Webster Account was opened with the Ontario License and the Rathbun Address.

f.    The photograph on the Ontario License is of MUDASSAR MALK, the defendant.[1]

---

[1] I have compared the Ontario License to photographs of MALIK maintained by the New York State Department of Motor Vehicles, and they appear to depict the same person.

4

10.   I have spoken with a cooperating witness (the "CW")[2] and have reviewed summaries of translations of consensual recordings of the meetings described below, and have learned the following, in sum and substance:

a.   On or about May 31, 2016, the CW met with SYED ALI RAZA and ALI NAQVI, the defendants. (The CW had previously been approached by RAZA to assist RAZA in obtaining bank loans using Shell Companies created with the personal identifying information of others.) At the meeting, RAZA provided the CW with, among other things, tax documents for the Khan Identity and Khan Elegant Arrangements, Inc.  RAZA explained that "Khan," is "leaving," and that the coconspirators could now open accounts in his name.  When the CW asked who would go to the bank with the CW, RAZA explained that MUDASSAR MALIK, the defendant, would go using a Canadian form of identification that the bank would be unable to verify.

b.   On or about June 2, 2016, the CW met with ALI NAQVI, the defendant.  NAQVI provided the CW an Experian credit report for the Khan Identity.  When asked by the CW what NAQVI does for RAZA, NAQVI replied, in sum and substance, that he does not get involved because he has his own stuff.  From my training, experience, and involvement in this investigation, I believe that NAQVI was advising the CW that he runs his own fraud schemes. NAQVI then requested the CW apply for credit cards in the name of NAQVI's mother.

c.   On or about June 10, 2016, the CW met again with RAZA and NAQVI.  RAZA provided the CW with an Ohio driver's license in the name of "Chowhudry Khan," and the Ontario License.

d.   On or about July 11, 2016, the CW met with RAZA, NAQVI, and MALIK, the defendants.  During this meeting, among other things, RAZA provided the CW with a green card in the name of "Chowhudry Khan" (the "Green Card").  The photograph on the Green Card, like that on the Ontario License, was of MUDASSAR MALIK, the defendant.

e.   On or about February 22, 2017, the CW met with ALI NAQVI, the defendant.  NAQVI told the CW that he had opened 300

---

[2] The CW has pleaded guilty pursuant to a cooperation agreement with the Government to access device fraud, and is cooperating with the Government in the hopes of obtaining a reduced sentence. The information provided by the CW has proven reliable and has been corroborated by other independent evidence, including recordings of conversations with the defendants charged herein.

accounts and described his fraud scheme with RAZA.  Specifically, he described, in sum and substance, the "Debit Card Scam" set forth above.

       f.   During the course of the fraud, RAZA instructed the CW to contact him over the 1970 Number and they communicated regularly over the 1970 Number.

    11.  From my review of transaction detail for the debit and credit cards associated with the NFCU Khan Account, I have learned that on or about February 16, 2015, a bank card associated with the NFCU Khan Account was charged for $49.43 at a movie theatre in New York, New York.

    12.  From my review of bank records and customer service calls obtained from Citibank and from my review of records obtained from the Social Security Administration, I have learned the following, among other things:

       a.   On or about March 18, 2016, an account was opened at Citibank using the Khan Identity (the "Khan Citibank Account").

       b.   On or about August 18, 2016, in a recorded customer service call (the "Citibank Call") made by the 1970 Number, an individual who identified himself as "Chowhudry Khan" provided the names and social security numbers for additional cardholders to be added to the Khan Citibank Account.  One of the names provided by the caller was an individual named "CH R SINGH" with a social security number ending in 4025 (the "4025 Number").

       c.   According to records from the Social Security Administration, the 4025 Number belongs to a minor born in 2016 who is not named "CH R SINGH."

    13.  On or about April 25, 2018, I met with the CW and played for him the Citibank Call.  The CW identified the voice of the caller as that of SYED ALI RAZA, the defendant.

    14.  From my review of a credit report for the Khan Identity I have learned that the unpaid credit card debt associated with the Khan Identity is approximately $118,918.

    15.  From my review of photographs and records from the New York State Department of Motor Vehicles as well as from law

enforcement databases, I have learned that an individual named Chowdhury Khan is a Pakistani national who left the United States on November 5, 2008 and whose green card expired on September 11, 2010.

WHEREFORE, the deponent respectfully requests that warrants issue for the arrests of SYED ALI RAZA, ALI NAQVI, and MUDASSAR MALIK, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

MATTHEW SOWA
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of May, 2018

HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7